IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SAMUEL LEWIS BAKER, JR., ) | |
| Petitioner, ) | Civil Action No. 7:06cv00129 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| UNITED STATES OF AMERICA, ) | By: Samuel G. Wilson |
| Respondent. ) | United States District Judge |

Petitioner, Samuel Lewis Baker, Jr., filed this 28 U.S.C. § 2255 motion challenging the validity of his plea and his sentence of 210 months incarceration followed by a term of five years supervised release, for knowingly distributing child pornography in interstate commerce in violation of 18 U.S.C. § 2252A(a)(2)(B); knowingly permitting a minor to engage in sexually explicit conduct while being a parent, in violation of 18 U.S.C. § 2251(b); and knowingly possessing three or more images of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Baker maintains that his guilty plea was not knowing and voluntarily and that counsel provided ineffective assistance. This matter is before the court on respondent's motion to dismiss. The court finds that Baker knowingly and voluntarily entered his plea and that he was not prejudiced by his counsel's allegedly deficient performance at sentencing. Accordingly, the court grants respondent's motion to dismiss.

I.

On August 25, 2004, a grand jury returned a 12-count indictment against Baker for knowingly mailing, transporting, and shipping child pornography in interstate commerce; knowingly distributing child pornography in interstate commerce; knowingly reproducing child pornography; knowingly permitting a minor to engage in sexually explicit conduct while being a parent; knowingly possessing three or more images of child pornography; knowingly using an interactive computer service for carriage of obscene, lewd, lascivious, and filthy pictures in interstate commerce; and knowingly taking

and receiving from an interactive computer service for carriage of obscene, lewd, lascivious, and filthy pictures in interstate commerce. Pursuant to a written plea agreement, Baker pled guilty to four counts: knowingly distributing child pornography in interstate commerce (counts 3 and 4); knowingly permitting a minor to engage in sexually explicit conduct while being a parent (count 7); and knowingly possessing three or more images of child pornography (count 10). In accordance with the plea agreement, the court dismissed the other eight counts of the indictment. Baker's plea agreement contained a waiver of the right to appeal any sentence within the advisory guideline range of punishment and a waiver of the right to collaterally attack the judgment and sentence imposed by the court. The agreement also acknowledged, as of the date he signed it – January 21, 2005, that he was fully satisfied with the representation and advice his attorney had given him. He agreed that he would "make known to the Court no later than at the time of sentencing any dissatisfaction or complaint" he had with his attorney's representation and waived any ineffective assistance claim known if not raised at the time of sentencing.

During the plea colloquy, Baker, among other things, stated under oath that he had received a copy of the indictment, that he had discussed the charges and his case with counsel, that he was fully satisfied with his counsel's representation, that he had the entire plea agreement read to him before he signed it, that he understood everything in the plea agreement, that no one had made any offers or different promises or assurances to him to induce entry of the plea, that no one had forced him to enter the guilty plea, that he understood the maximum penalties for the offenses charged, that he was waiving his right to appeal and to collaterally attack his sentence, and that his plea was knowing and voluntary. At Baker's plea hearing, the government called an investigating special agent to testify as to the pornographic pictures and other electronic images that were found on Baker's computers, including 28 images of Baker's children. After hearing a summary of the government's evidence against him,

2

including the government's witness testimony, the court asked Baker if there was any evidence with which he disagreed, to which he replied, "No, sir."

Also during this hearing, Baker testified he had been treated for mental illness in the past, including severe depression, dysthymia, social avoidance disorder, and psychosis. Upon further inquiry by the court, Baker also noted that he was currently on medication that "counteracted" his conditions. Nonetheless, Baker assured the court that neither his medication nor his mental conditions interfered with his ability to understand the proceedings. The court found that Baker was fully competent and capable of entering an informed plea and that his guilty plea was knowing and voluntary, and with confidence, the court accepted his guilty plea. However, in an abundance of caution, the court ordered a psychological examination based solely on Baker's comments regarding his mental illness and treatment. The competency examination confirmed that Baker was competent to stand trial and, at the sentencing hearing, the court found by a preponderance of the evidence that there was no reasonable cause to believe that Baker was suffering from a mental disease that would inhibit his ability to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

At his sentencing hearings, Baker spoke on his own behalf, relaying a history of abuse and mental illness, and Baker's attorney also called six witnesses who detailed Baker's relationship with his deceased father, his childhood, including abuse, and his family's history of mental illness. In addition, in his closing statement, counsel asked the court to consider testimony and evidence that Baker was abused as a child and had a family history of mental illness. Further, the court-ordered psychological evaluation outlined Baker's family history of abuse, his past and current mental status, and clinical observations relevant to his competency to stand trial.

The court ultimately sentenced Baker to 180 months on counts three and four, 210 months on

3

count seven, and 180 months on count ten, all to run concurrently. In addition, the court sentenced Baker to three years supervised release on each of counts three, four, and ten, and five years supervised release on count seven, all to run concurrently.

## II.

Baker alleges that "due to [his] mental illness and emotional distress, he did not fully understand the waiver[s]" in his plea agreement and, therefore, the plea agreement was not voluntarily and knowingly made. This claim contrasts sharply with the statements Baker made during his plea colloquy, when he affirmed that he completely understood the terms of the plea agreement, including each waiver, that he was entering the plea knowingly and voluntarily, that he was completely and fully satisfied with his attorney's representation, and that he did not challenge the government's evidence against him.[1] The court took extra care to ensure that Baker was entering his plea both knowingly and voluntarily by reviewing each provision until the court was fully satisfied that Baker understood. Further, in an abundance of caution, the court ordered a psychological evaluation of Baker to ensure his competence. The court made findings on the record at the plea and sentencing hearings that Baker was competent to stand trial and that he voluntarily and knowingly entered into the plea. These findings were not mere formalities but rather reflected the court's considered opinion that Baker was in fact fully competent and that his plea was knowing and voluntary. Nothing that has followed has dispelled that conclusion. Therefore, the court finds that Baker's challenges to the validity of his plea have no merit.

Baker knowingly and voluntarily waived his right to appeal a sentence within the guideline

---

[1] "[A] defendant's solemn declarations in open court affirming [a plea] agreement . . . 'carry a strong presumption of verity,' because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005), (quoting Blackedge v. Allison, 431 U.S. 63, 74 (1977); and citing United States v. Bowman, 348F.3d 408, 417 (4th Cir. 2003)). Because the declarations carry such a presumption, they present a formidable barrier in any subsequent collateral proceedings. United States v. White, 366 F.3d 291, 295-96 (4th Cir. 2004) (quoting Blackledge, 431 U.S. at 74).

4

range and to collaterally attack his plea and sentence. A waiver of the right to collaterally attack a conviction or sentence is valid so long as it is voluntarily and knowingly made. Lemaster, 403 F.3d at 220-23. Whether the waiver is voluntary and knowing depends "upon the particular facts and circumstances surrounding [its making], including the background, experience and conduct of the accused." United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992). A defendant's statements during the plea colloquy and evidence that he discussed the terms of the waiver provision with counsel and fully understood them provide powerful evidence that the waiver is valid. See United States v. Brown, 232 F.3d 399, 405-06. Thus, so long as Baker's plea agreement and the accompanying waiver of collateral attack were knowing and voluntary, Baker may not raise his claims in a § 2255 motion. Accordingly, the knowing and voluntary waiver bars any claims of ineffective assistance of counsel that Baker had related to counsel's performance before the close of the plea hearing. However, claims that allege that the sentence was "imposed in excess of the maximum penalty provided by statute" or that the defendant was "wholly deprived of counsel during his sentencing proceedings" survive a collateral attack waiver. Lemaster, 403 F.3d at 220 n.2. Under the circumstances, the court assumes without deciding that the waiver does not preclude Baker's claims of ineffective assistance of counsel following the plea hearing.

### III.

In order to establish a claim of ineffective assistance of counsel, Baker must show that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's alleged deficient performance, the outcome of his hearing or case would have been different. Strickland v. Washington, 466 U.S. 668, 669 (1984); see also Williams v. Taylor, 529 U.S. 362 (2000). Baker claims his counsel was ineffective in failing to meet and consult with him; failing to adequately discuss with him and independently investigate the presentence report ("PSR") and psychological evaluation; failing

5

to discuss with him and prepare the defense of diminished capacity; and failing to object to the imposition of a five-year term of supervised release at sentencing. The court finds that none of Baker's claims meet both <u>Strickland</u>'s deficient performance and prejudice prongs that would entitle him to relief and therefore his claims fail. <u>Strickland</u>, 466 U.S. at 669.

### A.

Baker claims ineffective assistance in counsel's failure to meet and consult with Baker between his initial appearance and his sentencing hearing. Baker concedes that counsel met with him at least three times, but complains that there was "virtually no face-to-face contact." Baker suggests that if counsel had met with him more frequently, they could have prepared an "attack [of] the [g]overnment's evidence and witnesses," discussed "discovery materials," and prepared a "possible defense" of diminished capacity. The court finds that Baker's plea agreement, which Baker acknowledged in the course of his knowing and voluntary plea, precludes his ineffective assistance claims related to his counsel's performance, at least as of the date the court accepted his plea, and that Baker cannot show prejudice as to his other ineffective assistance claims.

### 1.

Baker claims that had counsel met with him more often, counsel could have attacked the government's evidence and witnesses at his plea hearing. His argument, however, fails in a number of respects. First, the only material evidence the court heard during Baker's plea hearing was the factual basis to support the plea, and Baker expressly acknowledged after hearing the evidence that he heard nothing with which he disagreed. In context, therefore, his argument is somewhat illogical. Indeed, if he had voiced a material disagreement with the factual basis to support his plea, the court would not have accepted his plea. Second, Baker expressly acknowledged in his plea agreement that

6

he was satisfied with his counsel's representation; he agreed to "make known to the court no later than at the time of sentencing any dissatisfaction or complaint" he had with counsel's representation; and he expressly waived any ineffective assistance claim known and not raised before sentencing. Third, he told the court under oath during his plea colloquy that he was fully satisfied with his counsel. Fourth, the court found as a matter of fact that Baker's plea was a knowing and voluntary plea. Finally, he did not raise any concerns with the court regarding counsel's performance until he filed his current § 2255 motion. In short, the claim is not only somewhat illogical in context, his waiver bars it as well.

## 2.

Baker claims that his PSR and psychological evaluation contain numerous errors that he and his counsel would have discovered had his counsel properly investigated them or met and adequately conferred with him before sentencing.[2] The court agrees that counsel's discussions with Baker regarding these reports were not adequate.[3] However, the court finds no prejudice because either the alleged errors were not, in fact, errors or because they did not prejudice Baker at sentencing.

Baker claims that the PSR, which the court adopted, miscalculated his criminal history category because it incorrectly took into account a local ordinance violation, giving him a criminal

---

[2] Baker also claims that the government breached his plea agreement because Baker did not receive his PSR "well in advance," however, his claim is essentially a misdirected claim of ineffective assistance of counsel. There is no indication or evidence that Baker's attorney did not receive the PSR in a timely manner and, therefore, no support to his claim of fault on behalf of the government. Rather, the record only suggests that Baker's attorney did not review the PSR with Baker until the day of the sentencing hearing. Accordingly, his claim is one of ineffective assistance and is addressed under the same analysis as his claim for counsel's failure to discuss the PSR with Baker.

[3] However, the court notes that as a matter of practicality, Baker's attorney had minimal opportunity to meet with Baker between the time the PSR was finalized and the sentencing hearing, due to circumstances beyond counsel's control. Baker was transferred to New York on March 2, 2005, for his court-ordered competency review. The PSR was prepared on March 3, 2005, and approved on March 14, 2005. Baker did not return to Virginia until Friday, April 1, 2005, and his sentencing hearing was on Monday, April 4, 2005, leaving no business days for counsel to meet with Baker to review the PSR prior to the sentencing hearing.

7

Case 7:06-cv-00129-SGW-mfu   Document 16   Filed 12/28/06   Page 7 of 11   Pageid#: 284

history category of I, while Baker states it "should have been zero." However, Baker's assertion is wrong and the PSR properly calculated his criminal history category. When a defendant has no criminal history points, he still has a criminal history category of I. See U.S. Sentencing Guidelines Manual ch. 5, pt. A, sentencing table (2002). Therefore, Baker's criminal history category of I was not miscalculated and did not effect his sentencing guideline range. The court also notes that this trivial violation did not impact Baker's sentence. Therefore counsel's failure to object to this issue was not prejudicial to Baker.

Baker also claims that the PSR report improperly found that "both [of his] daughters had been involved in Court Seven." According to Baker, "this error caused one extra unit to be added to the offense level computation" which ultimately raised his sentencing guideline range. The court finds that the PSR correctly accounted for the exploitation of both daughters. Where the "relevant conduct of an offense of conviction includes more than one minor being exploited, whether specifically cited in the count of conviction or not, each such minor shall be treated as if contained in a separate count of conviction." U.S. Sentencing Guidelines Manual § 2G2.1 cmt. n.2 (2002). At Baker's plea hearing, the government presented evidence concerning pornographic pictures and videos of children that were found on Baker's computers, including 28 nude or partially-nude images of Baker's own children. Therefore, the court finds that the evidence supports the PSR's determination, which the court adopted, that both of Baker's daughters were victims. Accordingly, the court finds that the court correctly determined Baker's guideline range, and there is no prejudice in counsel's failure to challenge the PSR on that ground.

Baker alleges several errors in his psychological evaluation regarding his competency to stand trial. The court finds that although there were some errors in the report, these errors were not

8

contained in the PSR and did not impact the sentence the court imposed. As such, Baker has shown no prejudice and, therefore, cannot maintain his claim of ineffective assistance on this ground, as well.

As there was no prejudicial error as to any of the alleged mistakes in the PSR or the psychological evaluation, the court finds that an adequate discussion of these documents with Baker or independent investigation by counsel would not have changed the outcome of the case. Accordingly, Baker's ineffective assistance claim on these grounds fails.

### 3.

Baker claims that if his attorney had met with him more often, they could have prepared a defense of diminished capacity for sentencing and that counsel was ineffective in failing to prepare this defense. The court finds that Baker was not prejudiced by counsel's alleged failure to present a "diminished capacity defense" and, therefore, counsel's alleged failure to spend adequate time with Baker to more fully develop this theory of defense is insufficient to establish prejudice.

The court had before it the essence of a diminished capacity defense and was fully aware of and understood Baker's mental health issues and history of childhood abuse. The record reflects that Baker spoke on his own behalf at both the plea and sentencing hearings, raising the issues of childhood abuse and mental illness. In addition, at Baker's sentencing hearing, counsel called six witnesses on Baker's behalf who testified to Baker's family history of mental illness, and in his closing statement to the court, Baker's counsel specifically asked the court to consider the testimony detailing Baker's childhood abuse and history of mental illness. The court took that evidence into consideration, and also reviewed Baker's court-ordered psychological evaluation. The evaluation outlined a familial pattern of abuse, Baker's past and current mental status, and clinical observations

relevant to Baker's competency to stand trial. The court had all the pertinent evidence on the issue and finds that further elaboration or argument on the subject by counsel would not have altered the outcome of the case. The court also finds that because Baker's behavior involved repeated engagement over an extended period of time and involved minors, including his own children, it is doubtful that Baker's mental capacity would technically qualify for a downward departure under the guidelines. Moreover, the court would, in any event, exercise its discretion and neither depart nor vary the sentence. Therefore, the court finds Baker was not prejudiced by counsel's alleged failure to prepare this "defense" and, rejects this claim.

## B.

Finally, Baker alleges that counsel was ineffective for failing to object to the imposition of a five-year term of supervised release.[4] The court's imposition of a five-year term of supervised release on count seven, a violation of 18 U.S.C. § 2251(b), was not improper or erroneous because it did not exceed the statutory maximum. See 18 U.S.C. § 2251(e) (violation of the statute carries a term of 15 to 30 years incarceration); 18 U.S.C. § 3581(2) (a crime that carries a period of 15 years incarceration is a class B felony); 18 U.S.C. § 3583(b)(1) (where a defendants is convicted of a class B felony, the court may impose a term of supervised release of not more than five years). Counsel is not ineffective for failing to raise an objection or make a motion for which there is "no obvious basis." See Clanton v. Bair, 826 F.2d 1354, 1359 (4th Cir. 1987) (holding that an attorney's failure to make a motion for acquittal did not constitute ineffective assistance of counsel because there was

---

[4] The court sentenced Baker to three years supervised release on each of counts three, four and ten, and five years supervised release on count seven, all to run concurrently. Because only count seven carries a five year term of supervised release, the court will consider this claim as a challenge to the imposition of supervised release on that count only.

10

"no obvious basis" for the motion). Accordingly, the court finds that counsel's failure to object to the five-year term of supervised release on count seven was neither defective performance nor prejudicial to Baker's case, and this claim for ineffective assistance fails.

### IV.

For the reasons stated herein, the court grants respondent's motion to dismiss.

**ENTER**: This 28th day of December, 2006.

United States District Judge

11